IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 2:20-cr-00045-GAM |
| ABDUR RAHIM ISLAM<br>SHAHIED DAWAN<br>KENYATTA JOHNSON<br>DAWN CHAVOUS | JUDGE MCHUGH |
| Defendants. | |

### JOINT MOTION OF DEFENDANTS KENYATTA JOHNSON AND DAWN CHAVOUS FOR A JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

Defendants Kenyatta Johnson ("Councilmember Johnson") and Dawn Chavous ("Ms. Chavous") (collectively, "Defendants Johnson and Chavous"), by and through their respective counsel, hereby move, pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure ("Rule 29") for a judgment of acquittal because the Government failed to present evidence at trial sufficient to sustain a conviction for the charges against Defendants Johnson and Chavous in counts Nine and Ten of the Indictment.

The Government has failed to present evidence sufficient to satisfy the elements of the honest services wire fraud charges brought in counts Nine and Ten of the Indictment as against Defendants Johnson and Chavous. Specifically, and as set forth more fully below, the Government failed to present evidence sufficient to show that Councilmember Johnson committed any "official act" as required under *McDonnell v. United States*, 579 U.S. 550, 136 S.Ct. 2335 (2016), or that he intended to exert pressure on another to commit an official act. Additionally, the Government failed to present sufficient evidence to show that Ms. Chavous accepted things of value knowing that Defendant Abdur Rahim Islam ("Mr. Islam") and/or Defendant Shahied Dawan ("Mr.

1

Dawan") provided those things to influence Councilmember Johnson in taking any purported official acts.  Furthermore, the Government failed to present evidence sufficient to show that either Councilmember Johnson or Ms. Chavous acted with the requisite intent to influence or to be influenced.

Accordingly, and for the reasons set forth herein, Defendants Johnson and Chavous respectfully request that the Court enter a judgment of acquittal on all charges against them.

## ARGUMENT

I. **LEGAL STANDARD**

Pursuant to Rule 29, "after the government closes its evidence or after the close of all the evidence, the [C]ourt on the defendant's motion *must* enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a) (emphasis added).  Rule 29 further states that "[t]he [C]ourt may on its own consider whether the evidence is insufficient to sustain a conviction." *Id.*

In the Third Circuit, "[w]hen sufficiency of the evidence at trial is challenged, the Court must affirm if a rational trier of fact could have found the defendant guilty beyond a reasonable doubt and if the verdict is supported by substantial evidence." *United States v. Morris*, No. CRIM.05-440-13, 2010 WL 3505131, at *2 (E.D. Pa. Sept. 2, 2010), *aff'd sub nom United States v. Coles*, 558 F. App'x 173 (3d Cir. 2014) (citing *United States v. Bobb,* 471 F.3d 491, 494 (3d Cir. 2006)).  As a rational juror could not convict a defendant without substantial evidence, the critical question in reviewing a Rule 29 motion is "whether any rational trier of fact could have found proof of guilty beyond a reasonable doubt based on the available evidence." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005).  Specifically, the trier of fact must be able to find "the essential elements of the crime beyond a reasonable doubt." *United States v. Basley*, 357 F. App'x 455, 459 (3d Cir. 2009).  *See also United States v. Bycer*, 593 F.2d 549, 550 (3d Cir. 1979)

("Inferences from established facts are accepted methods of proof when no direct evidence is available.  *It is essential, however, that there be a logical and convincing connection between the facts established and the conclusion inferred*.") (emphasis added).

II.   **THE GOVERNMENT FAILED TO PRESENT EVIDENCE SUFFICIENT TO SHOW THAT COUNCILMEMBER JOHNSON COMMITTED AN "OFFICIAL ACT" WITH RESPECT TO THE BAINBRIDGE PROPERTIES.**

The Government alleges that Councilmember Johnson performed official acts relating to two properties: (i) the "Royal Theater, located at 1524-34 South Street, Philadelphia, Pennsylvania" and (ii) "the properties at 1309-1313 Bainbridge Street, Philadelphia" (the "Bainbridge Properties").  Indictment at 9, 32.  Neither count Nine nor count Ten of the Indictment—*i.e.*, the only counts brought against Defendants Johnson and Chavous—is specific to just one of those properties.  Rather, each of counts Nine and Ten appears to relate to *both* the Royal Theater and the Bainbridge Properties.  With respect to both counts and both properties, the Government failed to present evidence sufficient to sustain a conviction of Defendants Johnson and/or Chavous.  With respect to the Bainbridge Properties, in particular, the Government's proof fails.

A.   **The Elements of the Honest Services Fraud Counts.**

In order to obtain a conviction under count Nine and/or Ten, the Government must prove, *inter alia*, each of the following three elements beyond a reasonable doubt:

> First: That [defendant] knowingly devised a scheme to defraud by materially false or fraudulent pretenses, representations or promises; Second: That the defendant acted with the intent to defraud; and Third: That in advancing, furthering, or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

Because the Government charged counts Nine and Ten as honest services wire fraud premised on purported bribery, the Government must present evidence showing, beyond a

3

reasonable doubt, that "[a] public official . . . accept[ed] a bribe . . . i.e., something of value in exchange for . . . favorable treatment . . . ." *Third Circuit Criminal Model Jury Instruction*, No. 6.18.1341-3. *See also United States v. Wright*, 665 F.3d 560, 568 (3d Cir. 2012), *as amended* (Feb. 7, 2012) (to sustain conviction on honest services charges, government must prove, *inter alia*, that "the payor provided a benefit to a public official intending that he will thereby take favorable official acts *that he would not otherwise take*," and that the relevant public official possessed the mirror-image intent to be influenced by that benefit) (emphasis added) (citations omitted).

### B.  The "Official Act" Requirement as Defined by *McDonnell* and Its Progeny.

The Government's burden with respect to counts Nine and Ten does not stop there. Rather, in order to prove the bribery "scheme" charged in those counts, the Government must present evidence sufficient to satisfy, beyond a reasonable doubt, "two requirements for [each of the alleged] 'official acts.'" *McDonnell*, 136 S.Ct. at 2368 (citation omitted):

> First, the Government must identify a "question, matter, cause, suit, proceeding or controversy" that "may at any time be pending" or "may by law be brought" before a public official. Second, the Government must prove that the public official made a decision or took an action "on" that question, matter, cause, suit, proceeding, or controversy, or agreed to do so.

*Id*. In *United States v. Fattah*, the United States Court of Appeals for the Third Circuit described the "clear path for the Government to follow in proving that an accused has performed an 'official act.'" 914 F.3d 112, 152 (3d Cir. 2019):

> *McDonnell* lays out a clear path for the Government to follow in proving that an accused has performed an "official act." First, the Government must "identify a 'question, matter, cause, suit, proceeding or controversy' that 'may at any time be pending' or 'may by law be brought' before a public official." 136 S.Ct. at 2368 (quoting 18 U.S.C. § 201(a)(3) ). This first step is divided into two sub-components. In Step 1(A), the Government must "identify a 'question, matter, cause, suit, proceeding or controversy.'" *Id.* Step 1(B) then clarifies that the identified "question, matter, cause, suit, proceeding or controversy" be one that " 'may at any time be pending' or 'may by law be brought' before a public official." *Id.*

Under Step 1(A), a "question, matter, cause, suit, proceeding or controversy" must be "a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee." *Id.* at 2372. Importantly, "a typical meeting, telephone call, or event arranged by a public official" does not qualify as such a formal exercise of governmental power. *Id.* at 2368.

Step 1(B) then requires us to ask whether the qualifying "question, matter, cause, suit, proceeding or controversy" was one that "'may at any time be pending' or 'may by law be brought' before a public official." *Id.* As the *McDonnell* Court clarified, "'[p]ending' and 'may by law be brought' suggest something that is relatively circumscribed—the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete." *Id.* at 2369; . . . .

\*   \*   \*

Step 2 requires the Government to prove that the public official made a "decision" or took "an action" on the identified "question, matter, cause, suit, proceeding or controversy." *McDonnell*, 136 S.Ct. at 2368. The *McDonnell* Court explained:

> Setting up a meeting, hosting an event, or calling an official (or agreeing to do so) merely to talk about a research study or to gather additional information ... does not qualify as a decision or action on the pending question of whether to initiate the study. *Simply expressing support* for the research study at a meeting, event, or call—or sending a subordinate to such a meeting, event, or call—*similarly does not qualify as a decision or action on the study, as long as the public official does not intend to exert pressure on another official or provide advice, knowing or intending such advice to form the basis for an "official act*."

914 F.3d at 152–53 (emphasis added) (internal citations omitted).

In *Fattah*, the Third Circuit concluded that the first of the three purported official acts charged in the indictment—*i.e.*, the public official's "setting up a meeting between [the alleged payor] and the U.S. Trade Representative"—was in fact lawful. *Id*. at 154. The Court of Appeals concluded that the second of the three purported official acts—*i.e.*, "Fattah's efforts to secure [the alleged payor] an ambassadorship"—"present[ed] a closer question" requiring retrial. *Id*. at 155. This was so, the court concluded, because "[a]lthough those efforts—three emails, two letters, and one phone call—do not themselves qualify as a 'question, matter, cause, suit, proceeding, or

controversy' under *McDonnell*'s Step 1, they may nonetheless qualify as the making of a 'decision' or taking 'an action' on the identified matter of appointment." *Id*. at 156 (quoting *McDonnell*, 136 S.Ct. at 2368).  Thus, "*McDonnell*'s Step 2 require[d the court] to determine whether Fattah's efforts qualify as permissible attempts to 'express[ ] support,' or impermissible attempts 'to pressure or advise another official on a pending matter.'" *Fattah*, 914 F.3d at 156 (quoting *McDonnell*, 136 S.Ct. at 2371). Remand was necessary, the court reasoned, because "[d]etermining, for example, just how forceful a strongly worded letter of recommendation must be before it becomes impermissible 'pressure or advice' is a fact-intensive inquiry that falls within the domain of a properly instructed jury." *Fattah*, 914 F.3d at 156.

      **C.**      **The Government Failed to Present Evidence Sufficient to Show that Councilmember Johnson Performed an Official Act with Respect to the Bainbridge Properties.**

The Government failed to present evidence sufficient to show that Councilmember Johnson performed an official act with respect to the Bainbridge Properties. Over the course of the Government's entire case-in-chief, it presented evidence relating to only two purported actions taken by Councilmember Johnson with respect to the Bainbridge Properties.  The Government elicited testimony from Brian Abernathy indicating that when Mr. Abernathy first "reached out" to Councilmember Johnson "about reversion," Councilmember Johnson "seemed unconcerned" and "*asked* to see if a few things could move forward, if he could work with Uni/Penn to make the development work."  4/4/2022 Trial Tr. at 27:9-28:20 (emphasis added). *See also id*. at 28:10-13 ("Q. So you were *asked* to basically go back and talk to the developer? A. Yes, sir. He *asked* me to try it essentially try and work it out.") (emphasis added).  Mr. Abernathy further testified that he had the "absolute authority" to seek a reversion of the property, *id.* at 55:12-17, and that he does not "answer to City Council." *Id.* at 41:5-6.  Indeed, Mr. Abernathy testified that, even if City Council opposed a reversion, the City Council "can't stop it" from occurring. *Id.* at 41:25-42:2;

6

*see also id.* at 39:23-40:17 (Mr. Abernathy testifying that the concept of "Councilman's Prerogative" is "not a law" that must be followed and, instead, is simply "general deference" that may or may not be given to a Councilmember's request).

Neither of the actions relied on by the Government constitutes an official act under *McDonnell* and *Fattah* because, as Mr. Abernathy admitted, Councilmember Johnson did not have the power to stop the reversion. More importantly, there is no evidence he *intended* to take official action on the reversion. When the prosecution theory is that a public official gave advice to prompt a different official to take an official act, *Fattah* requires the Government to prove that the defendant official did so "*"knowing or intending* such advice to form the basis for an 'official act.'" (emphasis added). That is, whether a given act is an "official act" is an objective question, but there is a subjective element too: the defendant's knowledge and intent.[1] Thus, there is (1) no official act, and (2) no proof of Councilmember Johnson's intent that his comment form the basis for another's official act.

### III. THE GOVERNMENT FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION OF MS. CHAVOUS ON COUNTS NINE AND TEN OF THE INDICTMENT.

In addition to the arguments raised above, Defendants Johnson and Chavous submit that the Government has failed to present evidence sufficient to demonstrate that Ms. Chavous accepted things of value—namely, the payments Universal made to Chavous Consulting in 2013 and 2014—knowing that Defendants Islam and/or Dawan made those payments to influence Councilmember Johnson in taking supposed official acts on behalf of Universal.

---

[1] We maintain that intent is always required. *Fattah*'s reference to "knowledge or intent" does not mean that knowledge suffices absent intent. Knowledge is a building block of intent. This subjective knowledge and intent is separate from the always-required intent to be influenced by the thing of value.

7

Ms. Chavous has been charged with two counts of honest services wire fraud pursuant to 18 U.S.C. §§ 1343 and 1346. Section 1343 criminalizes the use of wires to execute any "scheme or artifice to defraud." 18 U.S.C. 1343. This includes any "scheme or artifice to deprive another of the intangible right of honest services," or what is known as "honest services fraud." *See* 18 U.S.C. § 1346. The charges against Ms. Chavous stem from Chavous Consulting entering into a consulting contract with Universal. The government alleges that during and after the period that the contract was in place—from approximately May 2013 through August 2014—Councilmember Johnson introduced an ordinance to rezone the Royal Theater and indicated he would not support reversion of a Bainbridge property owned by Uni-Penn, a joint venture in which Universal was a partner at the time.

As an initial matter, the record is entirely void of any evidence connecting Chavous Consulting's contract with Universal and Councilmember Johnson's actions. The government has not presented a single document or elicited any witness testimony regarding a meeting or communication where any of the Defendants proposed that in return for contracting with Chavous Consulting, Councilmember Johnson would take actions on Universal's behalf. Indeed, there is no evidence whatsoever to connect Chavous Consulting's contract and Councilmember Johnson's actions, except for the fact that Defendants Johnson and Chavous are married, one of the alleged "official acts" took place while Chavous Consulting's contract with Universal was in effect, and one of the acts occurred months after Chavous Consulting stopped billing Universal.

The Government likewise has not proven intent. In any prosecution for honest services fraud under Section 1346 "intent is the determinant." *See Wright*, 665 F.3d at 568; *see also United States v. Lynch*, 807 F. Supp. 2d 224, 232 (E.D. Pa. 2011) ("Bribery requires the specific intent to perform a quid pro quo . . . the Government must allege and prove some facts from which a jury

8

can infer that there was a specific intent to perform an exchange."). "The key to whether a gift [or payment] constitutes a bribe is whether the parties intended for the benefit to be made in exchange for some official action." *See United States v. Kemp*, 500 F.3d 257, 281 (3d Cir. 2007). Accordingly, a prosecution for honest services fraud requires: (1) that "the payor provided a benefit to a public official intending he will thereby take favorable acts that he would not otherwise take;" and (2) "that the official accepted those benefits intending, in exchange for the benefits, to take official acts to benefit the payor." *See Wright*, 665 F.3d at 568.

Here, the Government has elicited no direct evidence that Ms. Chavous was aware that Universal supposedly retained Chavous Consulting's services from approximately May 2013 through August 2014 in order to bribe Councilmember Johnson. Instead, the Government's theory relies on the argument that Ms. Chavous did minimal work for Universal under the contract, which the government contends is circumstantial evidence that she knew the contract was a bribe intended to influence her husband's official acts. The record does not support that contention and, based on the evidence presented in the Government's case (or lack thereof), no rational juror could convict her beyond a reasonable doubt.

The Government's position that Ms. Chavous did minimal work appears to hinge on the subjective opinion of a single witness with no personal knowledge of the events at issue: Special Agent Richard J. Haag, who testified that—in his opinion—Ms. Chavous did only 40 hours of work for Universal during the contractual period. That is not enough. Putting aside for now whether that opinion is credible or supported by the evidence (it is not), the Government has not presented any evidence that Ms. Chavous or any other Chavous Consulting employee or contractor had any kind of hourly requirement under the contract. To the contrary, Special Agent Haag on cross examination testified that Chavous Consulting had a flat fee agreement with Universal.

9

3/30/2022 Tr. 119:4-15.  Nothing in the contract requires Ms. Chavous or any other employee of Universal to work a set number of hours per month.  *See, e.g.*, *id.*; *see also* Govt. Exs. 142, 156.

Even if the evidence presented by the Government showed that the contract did require a certain number of hours of work, the record is clear that it is not merely Ms. Chavous's work that is at issue here.  Indeed, Universal did not just contract with Ms. Chavous; it contracted with her company—Chavous Consulting, which includes employees, specifically, Portia Fullard, who testified that both she and Ms. Chavous worked hard for Universal on behalf of Chavous Consulting.  *See, e.g.*, 4/4/2022 Tr. 107:2-17; *see also* Govt. Exs. 142, 156.

Otherwise, the Government presented insufficient evidence that Ms. Chavous did only minimal work on behalf of Universal.  To be sure, a number of current or former Universal employees testified that they did not *recall* work what Chavous Consulting did for Universal nearly ten years ago.  But no witness—save the agent tasked with investigating Ms. Chavous—testified that this was a "low show" job, which is what the Government argues.  Nor could they, given that when presented with documentary evidence to refresh their recollections of the events that transpired almost a decade ago, each witness was able to speak to Ms. Chavous's work.  For example:

- Dr. Penny Nixon testified that Ms. Chavous was part of a team involved in seeking funds from the Philadelphia School Partnership and that she helped Universal's efforts with issues it faced with the Philadelphia School District.  4/1/2022 Tr. 167-71.  She likewise stated that Ms. Chavous played a role in connecting Universal to charter school organizations in April 2014.  *Id.* at 173:2-174:24.
- Portia Fullard testified on cross examination that she worked hard for Universal, specifically that she and Ms. Chavous scheduled tours for elected officials like Rep. Brian

10

Sims and Sen. Larry Farnese, as well as for individuals like Jeff Brown from Brown's Shoprite and Joel Greenberg and Marcy Gringlas. 4/4/2022 Tr. 117-130, 139-142. Ms. Fullard also testified that Ms. Chavous attended internal Government Relations meetings with Universal COO George Burrell. *Id.* 143:22-145:7.

- Eve Lewis testified that, after reviewing emails and documents from 2013 and 2014, she recalls that Ms. Chavous did work for Universal planning its 20th Anniversary Celebration and that Ms. Chavous was involved in putting together marketing materials, agendas, and brochures for Universal tours for donors like Joel Greenberg. She also testified that Ms. Chavous' actions indicated that she was certainly planning on doing work for Universal. Ms. Lewis also testified that Ms. Chavous was part of the team that solicited letters of support from legislators for grant funding. She also stated that Ms. Chavous connected Universal to the larger community, which was in line with her role as a consultant. *See, e.g.*, 4/5/2022 Tr.

On this record, the unsupported testimony of a single government agent is not sufficient evidence for any rational juror to conclude that Chavous Consulting did only minimal work for Universal and then make the logical leap that Ms. Chavous and Councilmember Johnson accepted payments knowing that Mr. Islam and/or Mr. Dawan made those payments to secure supposed official acts on behalf of Universal with respect to the Royal Theater and Bainbridge. Accordingly, the Government has not proven the charges against Councilmember Johnson and Ms. Chavous in Counts Nine and Ten, and they cannot be convicted of honest services wire fraud.

## IV. CONCLUSION

The Government has not and cannot meet its burden of proving beyond a reasonable doubt each element of the offenses charged against Defendants Johnson and Chavous. Accordingly, pursuant to Fed. R. Crim. P. 29, the Court must acquit Councilmember Johnson and Ms. Chavous.

Dated:  April 6, 2022                                       Respectfully submitted,

/s/ Patrick J. Egan
Patrick J. Egan
Nathan Huddell
Stephanie Ohnona
Saverio S. Romeo
**FOX ROTHSCHILD LLP**
2000 Market Street, 20th Floor
Philadelphia, PA  19103-3222
Phone:  (215) 299-2000
Fax:  (215) 299-2150

*Attorneys for Defendant Kenyatta Johnson*

/s/ Barry Gross
Barry Gross
Elizabeth M. Casey
Henry Grabbe
**FAEGRE DRINKER BIDDLE & REATH LLP**
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
Phone:  (215) 988-2700
Fax:  (215) 988-2757

*Attorneys for Defendant Dawn Chavous*

**CERTIFICATE OF SERVICE**

I, Patrick Egan, hereby certify that on this day, the foregoing was filed electronically with the Case Management/Electronic Case Filing System ("CM/ECF") for the Federal Judiciary. Notice of this filing will be sent to all parties by operation of the Notice of Electronic Filing system, and the parties to this action may access this filing through CM/ECF. Copies of this filing have also been sent to all parties of record via electronic mail.

Dated:  April 6, 2022                                                     */s/ Patrick J. Egan*
                                                                                            Patrick J. Egan